896 F.Supp. 1137 (1995)
PETTCO ENTERPRISES, INC., et al., Plaintiffs,
v.
James C. WHITE, Sr., et al., Defendants.
Civ. A. No. 94-A-240-N.
United States District Court, M.D. Alabama, Northern Division.
August 18, 1995.
*1138 *1139 F. Hilton-Green Tomlinson, Michael L. McKerley, Pritchard, McCall & Jones, Birmingham, AL, and M. Jack Hollingsworth and William S. Crowson, Hollingsworth & Associates, Birmingham, AL, for plaintiffs.
Jack E. Held, Michael A. Catalano, Sirote & Permutt, Birmingham, AL, Ellen Ruth Leonard, Andrew W. Redd, Alice Ann Byrne, Alabama Department of Corrections, Legal Division, Montgomery, AL, Michael Bownes, Ralph Reynard, III, Kathy Shelnutt LeCroix, Alabama Insurance Department, Montgomery, AL, Rachel Sanders-Cochran, and H. William Wasden, and Pierce, Carr, Alford, Ledyard & Latta, P.C., Mobile, AL, for defendants.

MEMORANDUM OPINION
ALBRITTON, District Judge.

I. INTRODUCTION
This cause is now before the court on Motions for Summary Judgment filed by defendants on June 12, 1995. James C. White, Sr. ("White"), Director of the Finance Department of the State of Alabama, filed one of the motions. The remaining defendants, who all are in some way associated with the Department of Corrections, filed their own motion. The court finds that the Motions for Summary Judgment are due to be GRANTED.

II. PROCEDURAL HISTORY
Plaintiffs, Pettco Enterprises, Inc. ("Pettco") and Larry B. Petty ("Petty") filed a class action complaint in this court on March 1, 1994. Plaintiffs named several defendants.[1] Plaintiffs sought both punitive and compensatory damages, as well as declaratory and injunctive relief. This complaint characterized the suit as seeking redress pursuant to 42 U.S.C. § 1983 for deprivations *1140 of plaintiffs' Fifth and Fourteenth Amendment rights by defendants under color of state law. The jurisdictional basis for bringing the suit in federal court was 28 U.S.C. §§ 1331 and 1343(3). Plaintiffs purportedly brought the action on behalf of themselves and all members of a class composed of all individuals, partnerships, corporations, or other entities who have suffered injury or property damage as a result of motor vehicle accidents involving State-owned vehicles driven by uninsured prisoners, trustees or inmates on work release programs (hereinafter "inmates").[2] In addition to White and the Corrections Defendants, the original complaint named Mike Weaver ("Weaver"), Commissioner of the Insurance Department of the State of Alabama as a defendant.
Weaver, the Commissioner of Insurance, brought a Motion for Summary Judgment on July 26, 1994. This court granted the Motion for Summary Judgment filed by Weaver individually and as Commissioner of the Insurance Department of the State of Alabama in early September 1994. The remaining defendants moved for summary judgment in July, 1994 by raising such issues as Eleventh Amendment immunity and qualified immunity. This Motion for Summary Judgment was denied as moot in light of the numerous changes made in Plaintiffs' Amended Complaint.
On August 26, 1994, plaintiffs submitted a Brief in Support of Case Proceeding as a Class Action. Plaintiffs sought class certification under Fed.R.Civ.P. 23(a) and 23(b)(2). On September 9, 1994, the court held an evidentiary hearing and oral argument on class certification. At the direction of the court, the plaintiffs submitted supplemental briefs on the class certification issue on September 19, 1994. On this same date, pursuant to leave of court granted on September 9, plaintiffs filed an Amended Complaint. The Amended Complaint varied in two significant ways from the original complaint. In the Amended Complaint, plaintiffs asked for declaratory and injunctive relief, but not for damages. Plaintiffs also changed the denomination of the type of class treatment which they were seeking. The Amended Complaint and supplemental briefs in support of class certification seek certification of the case only as a Rule 23(b)(1)(A) class action.
On December 22, 1994, this court issued a Memorandum Opinion and Order denying plaintiffs' request for class certification under Fed.R.Civ.P. 23(b)(1)(A). Plaintiffs sought reconsideration of that decision. In the alternative, plaintiffs sought permission to amend their complaint again and to seek certification of the class as a Rule 23(b)(1)(B) or a Rule 23(b)(2) class action. On May 23, 1995, this court granted plaintiffs' motion to amend their complaint, denied their motion to set aside the refusal to certify the class under Federal Rule of Civil Procedure 23(b)(1)(A), and certified a class under Rule 23(b)(2).
According to the Second Amended Complaint ("SAC"), the plaintiffs are Pettco, Petty and "all individuals, partnerships, corporations, or any other person within the meaning of the Equal Protection and Due Process of Law clauses, and any `other person' for § 1983 claims." SAC ¶ II. The SAC defines the class as
all individuals, partnerships, corporations, or any "other persons" afforded constitutional protection under the rights of Equal Protection and Due Process of Law clauses who have suffered personal injury and/or property damage arising out of the negligent or wrongful acts and omissions committed by an inmate driving a State-owned vehicle while in the custody or control of the Department of Corrections for the State of Alabama.
SAC ¶ V (emphasis added). Additionally, the SAC defines the class to include
all individuals, partnerships, corporations, or any "other persons" afforded constitutional protection under the rights of Equal Protection and Due Process of Law clauses who will suffered personal injury and/or property damage arising out of the negligent or wrongful acts and omissions committed as long as the Defendants allow *1141 inmates to operate State-owned vehicles while those inmates are in the custody or control of the Department of Corrections for the State of Alabama.
SAC ¶ V (emphasis added).
The SAC alleges that defendants, acting either separately or in concert, acted under color of State law and deprived plaintiffs of various constitutional rights under the Equal Protection and Due Process of Law clauses in Fifth and Fourteenth Amendments. The defendants allegedly authorized inmates to operate vehicles owned by the State of Alabama. Plaintiff further alleges that although defendants knew that the inmates were judgment proof, defendants allowed the inmates to drive these vehicles without insurance.
Moreover, plaintiffs allege that defendants have created a system of remuneration for persons injured as a result of accidents involving vehicles owned by the State of Alabama which is arbitrary and capricious and which allows for deprivation of individual property rights without Due Process of Law or Equal Protection of the Law;[3] that the actions of the defendants were deliberately indifferent to plaintiffs' constitutional rights; and that the acts of defendants have caused plaintiffs to lose large sums of money for personal injuries and property damage caused by the prisoners.
Plaintiffs seek a declaration of their rights and an injunction which prevents defendants from denying that inmates operating State-owned vehicles are "agents" or "employees" for purposes of §§ 36-1-6 and 36-1-6.1 of the Alabama Code. Plaintiffs seek an injunction against the defendants which will require defendants to extend to plaintiffs the same benefits and protection they would receive if they had been in an accident involving a non-prisoner employee or agent of the State of Alabama. Plaintiffs no longer seek damages. Plaintiffs ask for attorneys' fees under 42 U.S.C. § 1988.

III. FACTS
The court has carefully considered all affidavits, deposition excerpts, and documents submitted in support of and in opposition to the motions. The submissions, viewed in the light most favorable to the non-movant, establish the following facts:
It is undisputed that the State of Alabama allows and authorizes inmates, even those without any insurance, to operate State-owned vehicles on Alabama roads. In his deposition, Herring testified that when he became Commissioner of the Department of Corrections in 1977, it was then, and continued to be, the policy and procedure of the Department of Corrections to allow inmates to drive State-owned vehicles. (Herring Dep. at 8). There are no uniform rules governing inmates who operate State-owned vehicles, rather each correctional facility seems to promulgate its own set of rules. (Herring Dep. at 8-13; Ptf. Exs. B, C, & E). It is also undisputed that these inmates have been involved in traffic accidents which caused property damage or personal injury. (Herring Dep. at 14; Ptf. Ex. F; Def. Ex. 2; Spillars Dep. Ex. 1).
In June of 1993, a Department of Corrections van driven by an inmate hit the back of a vehicle owned by Pettco and operated by Petty. (Def.Ex. 2). Pettco filed a claim with the State Board of Adjustment seeking $757.00 for uninsured dental expenses incurred by Petty as a result of the accident, $2557.83 for damages to personal property, $952.14 for other damages, and interest of $1.00 daily from 6/25/93 until satisfaction. (Def.Ex. 2). It is undisputed that Pettco's vehicle was covered by an insurance policy issued by Aetna Casualty & Surety and that Pettco had not filed a claim under that policy at the time it filed the claim with the Board of Adjustment. (Def.Ex. 2).
Apparently, the State requires all claims against the Department of Corrections to be filed with the Board of Adjustment.[4] (Herring *1142 Dep. at 26). When a claim is filed against the Department of Corrections with the Board of Adjustment, the Department of Corrections files a response to such claim and makes a recommendation as to payment. (Def.Ex. 3). The Board of Adjustment then makes a determination of what it will be pay on the claim. (Def.Ex. 3). There have been many claims where the Department of Corrections recommended payment, but the Board of Adjustment denied payment. (Def. Ex. 3). On the other hand, there have been instances where the Department of Corrections has denied liability for the claims and recommended that no payment be made, and the Board of Adjustment has authorized payment anyway. (Def.Ex. 3). Plaintiffs contend that the Board of Adjustment pays a party injured by an inmate driver in an automobile accident less than the injured party would be able to recover if the driver had been a State employee covered by liability insurance made available by the State.
According to the deposition testimony of Ben Spillers ("Spillers"), the Director of the Risk Management Division of the Department of Finance, claims by a member of the public against the Department of Corrections for harm caused in accidents wherein an inmate driver negligently injures that person are not covered by the State insurance because the inmate is not an agent or employee of the State of Alabama and not covered under the General Liability Trust Fund. (Spillars Dep. at 27-30). Beginning in October of 1992, the State of Alabama began a program and broadened the General Liability Trust Fund guidelines to cover auto liability of State employees acting in the scope of their employment. (Spillars Dep. at 39). The General Liability Trust Fund, which provides insurance for the State, does not usually insure specific vehicles, rather it insures drivers. (Spillars Dep. at 57). For example, a State agency will submit a list of employees who will be driving certain State-owned vehicles and the insurance covers them, not the vehicles themselves. (Spillars Dep. at 58-59). Because inmates are not employees or agents of the State, Spillars would reject any claim submitted for money from the General Liability Trust Fund which involved a State-owned vehicle driven by an inmate. (Spillars Dep. at 33).

IV. SUMMARY JUDGMENT STANDARD
Under Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of `the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323, 106 S.Ct. at 2553. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Id. at 322-23, 106 S.Ct. at 2552-53.
Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the `depositions, answers to interrogatories, and admissions on file,' designate `specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S.Ct. at 2553. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the nonmovant *1143 and must draw all justifiable inferences from the evidence in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).
After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See, Fed.R.Civ.P. 56(c).

V. DISCUSSION

A. The Statutory Context
The plaintiffs challenge the system that the State of Alabama employs in determining whether and how much money should be allotted to reimburse individuals who have the misfortune of being involved in an automobile accident with a State-owned vehicle. As a preliminary matter, the court notes that various portions of the Alabama Code are implicated by the issues in this case.
The Alabama Code provides that
State inmates shall be employed at such labor, in such places and under such regulations within the state as may be determined by the department of corrections.... The department of corrections is authorized to direct inmates to work at any labor and at any site except as provided otherwise by law.
Ala.Code § 14-3-47(a) (1975). Thus, the practice of using inmates to drive State-owned vehicles is authorized by statute. Moreover, the Alabama Code explicitly authorizes the Board of Corrections to adopt regulations and policies permitting the Commissioner of the Board of Corrections to extend the limits of the place of confinement of an inmate by authorizing the inmate to leave a State correctional institution for the purpose of working. Ala.Code § 14-8-2 (1975). In certain circumstances, the Alabama Code also authorizes inmates to leave a State correction institution for the purpose of seeking employment or future housing or participating in certain educational programs. Ala.Code §§ 14-8-61 & 14-8-62 (1975). In either case, Alabama law clearly provides that
[n]o inmate granted privileges under the provisions of this article shall be deemed to be an agent, employee or involuntary servant of the board [of corrections] while involved in the free community or while going to and from employment, or other specified areas.
Ala.Code §§ 14-8-5 & 14-8-40 (1975).
Although Alabama law does not require that the owners and operators of motor vehicles carry liability insurance, it does provide a mechanism by which State employees who operate motor vehicles in the performance of their duties may acquire insurance and receive reimbursement from the State department, agency, bureau, or division for which they work for the actual cost of the coverage. Ala.Code § 36-1-6 (1975). Additionally, the State provides some insurance coverage for negligent, wrongful acts of State employees or agents. Ala.Code § 36-1-6.1 (1975). This section provides that
[t]he various state agencies, departments, boards or commissions shall determine and report their needs for liability coverage to the finance director, the insurance commissioner, and the attorney general. The finance director, with the advice of the insurance commissioner and attorney general, shall then determine the type of blanket policy needed to provide basic coverage for deaths, injuries, or damages arising out of the negligent or wrongful acts or omissions committed by state employees or agents of the state, including individuals serving as foster parents ... [or foster care providers] ..., while in the performance of their official duties in the line and scope of their employment or duties as foster parents or foster care providers. Any policy of insurance or reinsurance shall be selected by the finance director on a competitive bid basis....
Ala.Code § 36-1-6.1(a) (1975). In addition to authorizing the purchase of insurance, the Alabama Code provides that the finance director, with the advice of the insurance commissioner and the attorney general, may provide for self-insurance of the entire State or any part of the State. Ala.Code § 36-1-6.1(b) (1975).

*1144 B. Merits of the Motions for Summary Judgment
Plaintiffs bring this suit pursuant to 42 U.S.C. § 1983. Section 1983 provides a private cause of action for persons whose rights under the federal constitution or laws have been violated under color of state law. See 42 U.S.C. § 1983. In order to establish a claim under Section 1983, plaintiffs must prove that the defendants acted under the cloak of state authority when they took the alleged actions against plaintiffs and that the actions deprived plaintiffs of a right or rights secured by the Constitution or by federal law. Thus, Section 1983 is not a source of rights, rather it is a means of vindicating federal rights. Albright v. Oliver, ___ U.S. ___, ___, 114 S.Ct. 807, 811, 127 L.Ed.2d 114 (1994).
When a court begins to analyze a Section 1983 claim, it must first "identify the specific constitutional right allegedly infringed." Id. Whether a constitutional violation has occurred can only be determined by applying the standards applicable to that particular constitutional provision. See, Graham v. Connor, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870-71, 104 L.Ed.2d 443 (1989). Plaintiffs contend that their rights to Due Process and their rights to Equal Protection of the laws have been infringed. The court will examine each of these claims separately.

1. Equal Protection Claims
The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1. "Social and economic legislation ... that does not employ suspect classifications or impinge on fundamental rights must be upheld against equal protection attack when the legislative means are rationally related to a legitimate governmental purpose." Hodel v. Indiana, 452 U.S. 314, 331, 101 S.Ct. 2376, 2387, 69 L.Ed.2d 40 (1981) (citations omitted).
Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.
McGowan v. Maryland, 366 U.S. 420, 425-26, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961). More recently the Supreme Court has explained that
[w]hen local economic regulation is challenged solely as violating the Equal Protection Clause, this Court consistently defers to legislative determinations as to the desirability of particular statutory discriminations. Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest. States are accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude, Legislatures may implement their program step by step in such economic areas, adopting regulations that only partially ameliorate a perceived evil and deferring complete elimination of the evil to future regulations. In short, the judiciary may not sit as a super-legislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines; in the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment.
New Orleans v. Dukes, 427 U.S. 297, 303-04, 96 S.Ct. 2513, 2516-17, 49 L.Ed.2d 511 (1976) (citations omitted).
*1145 Plaintiffs contend that it is a denial of equal protection for the State to provide automobile liability insurance for its agents and employees who drive State-owned vehicles and to then allow inmates, who are by statutory definition not agents or employees, to drive State-owned vehicles without providing them with insurance. The persons who are allegedly denied equal protection are the plaintiffs who are injured or damaged by an inmate driving a State-owned vehicle without insurance. Plaintiffs point out that they could look to liability insurance coverage if the vehicle had been driven by someone other than an inmate, while with an inmate driver they are relegated to a Board of Adjustment claim which is much more restrictive than liability insurance as to recoverable damages. Therefore, plaintiffs argue, their rights to equal protection should require the State to either insure inmate drivers or prohibit inmates from driving State-owned vehicles.
Plaintiffs do not contend, nor does this court find, that the scheme set up by Alabama law involves any suspect classification or fundamental right. What "discrimination" may exist is not invidious; the Alabama statutory provisions and the decisions of the State agencies implementing them are rationally related to the State's legitimate interest in saving money and allocating scarce State resources efficiently. Plaintiffs devote a substantial portion of their brief in opposition to the Motions for Summary Judgment to discussing the reason that Alabama has made such a decision. In the words of the plaintiffs, "there is only one answer, and one answer only, and that is money." By their own arguments, plaintiffs acknowledge the State's legitimate interest and the connection between the challenged practices and that interest.
Plaintiffs are quick to point out that they are not arguing that Alabama Code §§ 36-1-6 or 36-1-6.1, which authorize liability insurance for State agents and employees, are unconstitutional, nor do they contend that the establishment of a Board of Adjustment is unconstitutional. Plaintiffs further assert that there is actually no legislative decision at issue in the case. The court notes that policy decisions made by State officials are analyzed in the same fashion as "legislative decisions." See Silver v. Baggiano, 804 F.2d 1211, 1213, 1218 (11th Cir.1986) (finding that policy of the Commissioner of the Alabama Medicaid Agency and the Attorney General of Alabama denying Medicaid reimbursement to podiatrists while at the same time reimbursing medical doctors for podiatric services did not violate the Equal Protection Clause.) Moreover, plaintiffs' arguments implicitly challenge the legislative decisions embodied in other sections of the Alabama Code which allow inmate labor, at least to the extent that these legislative decisions authorize inmates to drive State-owned vehicles. Most plainly, plaintiffs' theory of the case is that these inmates must be agents or employees of the State of Alabama, and this directly contravenes the section of the Alabama Code which states that they are not.
Plaintiffs would have this court consider the case as one involving an arbitrary decision by officials of the State. Specifically, they point to what they characterize as the State's arbitrary decision to allow inmates to drive State-owned vehicles. Plaintiffs fail to cite any case that supports their contention that such a decision amounts to a deprivation of rights protected by the Equal Protection Clause of the Fourteenth Amendment. Moreover, the court finds that it is clear that this is not an arbitrary decision. It is a decision authorized by State law and rationally-related to the goal of saving the State of Alabama money. Thus, the defendants have not violated plaintiffs' rights to Equal Protection of the laws by making a decision that it would be too costly to either do without inmate labor being able to drive State-owned vehicles or to provide insurance for inmate drivers.

2. Due Process Claims
Plaintiffs contend that the decisions made by the defendants not to provide insurance coverage for inmates who drive State-owned vehicles amounts to a deprivation of their substantive due process rights. In essence, plaintiffs contend that the State should not be allowed to use inmates as drivers of the vehicles unless it also makes a means of recovery available to members of the citizenry *1146 who are injured or suffer property damage in accidents caused by the negligence of such inmate drivers. The State action which is alleged to have caused plaintiffs' constitutional deprivation is not the inmate's negligent driving of the vehicles. Rather, plaintiffs contend that the state's policy decisions not to acknowledge that the inmate drivers are agents or employees of the State and provide them with insurance are the cause of the deprivation. Plaintiffs contend that the defendants should recognize that the inmate drivers are agents or employees despite the fact that such an acknowledgment is contrary to State law. Plaintiffs assert that the facts of the instant case are sufficiently analogous to the facts of cases where courts have held State actors liable for the intentional acts of third parties to require this court to find State liability. This court does not agree.
If an employee or agent of a company negligently injures a person in a automobile accident, the person can seek recovery for personal injury and property damage by suing the company under Alabama tort law. Alabama's Constitution provides that the State cannot be made a defendant in such a suit.[5] With the protection of this immunity, Alabama could decide not to provide insurance coverage for any State-owned vehicle or any driver operating a State-owned vehicle.[6] Alabama has made a policy decision to allocate its resources in such a way that provides insurance so that there will be money available to recompense accident victims in some circumstances; however, Alabama has not decided to provide a source of recovery for all victims of accidents which were caused by drivers of State-owned vehicles. As previously discussed, this court finds that this policy decision is not an arbitrary one.
What the plaintiffs in this action really want is to be given money to pay for the property damage and personal injuries that they suffered as a result of their automobile accidents. The real impediment to this recovery is the doctrine of sovereign immunity and the Eleventh Amendment.[7] Knowing that any challenge against such a well-established principle as sovereign immunity would be in vain, plaintiffs have launched a collateral attack on the State's policy decisions regarding whether and when to voluntarily provide insurance coverage. Despite plaintiffs' assertions to the contrary, this suit does not state a claim for a deprivation by the State of rights secured to the plaintiffs by the Due Process Clause of the Fourteenth Amendment.
The Due Process Clause of the Fourteenth Amendment provides in relevant part, "nor shall any State deprive any person of life, liberty, or property, without due process of law...." U.S. Const. amend. XIV, § 1. This phrase has been understood to encompass both a procedural and a substantive element. See Planned Parenthood of Southeastern Pennsylvania v. Casey, 505 U.S. 833, ___, 112 S.Ct. 2791, 2804, 120 L.Ed.2d 674 (1992). The procedural element, which is not at issue here, guarantees that a State may not effect a deprivation of life, liberty, or property without certain procedural safeguards. The substantive element of the clause has a twofold interpretation. First, a plaintiff may bring suit under Section 1983 to obtain a remedy for a State official's violation of the rights protected by the Bill of Rights, such as the right to freedom of speech or freedom from unreasonable searches and seizures. Zinermon v. Burch, 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990). Thus, the clause selectively incorporates provisions of the Bill of Rights and protects these rights from infringement by State and local governments. "Second, the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions `regardless of the fairness of the procedures used to *1147 implement them.'" Id. (quoting Daniels v. Williams, 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986)). This substantive element of the clause "prevents the government from engaging in conduct that `shocks the conscience,' or interferes with rights `implicit in the concept of ordered liberty.'" United States v. Salerno, 481 U.S. 739, 746, 107 S.Ct. 2095, 2101, 95 L.Ed.2d 697 (1987) (quoting Rochin v. California, 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952).
Although the Supreme Court has extended substantive due process protection to certain unenumerated rights, it has not extended Fourteenth Amendment coverage to a host of other areas. In fact,
the Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this uncharted area are scarce and open-ended. The doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field.
Collins v. City of Harker Heights, Tex., 503 U.S. 115, 125, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992) (citation omitted). Areas in which substantive rights are created only by State law (as is the case with tort law and public employment law) are not subject to substantive due process protection under the Due Process Clause because "substantive due process rights are created only by the Constitution." Regents of Univ. of Mich. v. Ewing, 474 U.S. 214, 229, 106 S.Ct. 507, 515, 88 L.Ed.2d 523 (1985) (Powell, J., concurring). As a result, these State law based rights constitutionally may be rescinded so long as the elements of proceduralnot substantive due process are observed.
Not long ago the Supreme Court examined the strictures of substantive due process in DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). Prior to DeShaney, federal circuit courts were divided over the issue of when, if ever, the failure of State or local governmental authorities to provide an individual with adequate protection from the actions of third parties exposed the State or local governmental authorities to liability. In DeShaney, a mother, on behalf of her infant son, brought an action pursuant to Section 1983 against social workers alleging that they had deprived her son of his liberty interest in bodily integrity in violation of his substantive due process rights under the Fourteenth Amendment. Id. at 191, 109 S.Ct. at 1001. The boy had been so severely and repeatedly beaten by his father that he had become mentally retarded. Id. at 193, 109 S.Ct. at 1001-02. For more than a year, the social workers had received reports of abuse from various sources and had taken limited steps to address the abuse, but they had not removed him from his father's home. Id. at 192-93, 109 S.Ct. at 1001-02. The mother alleged that the social workers, because they should have been or actually were aware of the danger to the child, had a constitutional duty to intervene to protect him from his father. Id. at 193, 109 S.Ct. at 1001-02.
The Supreme Court addressed the mother's claims by explaining that
nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means. Nor does history support such an expansive reading of the constitutional text. Like its counterpart in the Fifth Amendment, the Due Process Clause of the Fourteenth Amendment was intended to prevent government "from abusing [its] power, or employing it as an instrument of oppression." Its purpose was to protect the people from the State, not to ensure that the State protected them from each other. The Framers were content to leave the extent of governmental obligation in the latter area to the democratic political processes. *1148 489 U.S. at 195-96, 109 S.Ct. at 1003 (internal citations omitted). Thus, the Supreme Court recognized that the Due Process Clause does not confer an "affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." Id. at 196, 109 S.Ct. at 1003. Moreover, the Supreme Court opined that
[i]f the Due Process Clause does not require the State to provide its citizens with particular protective services, it follows that the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them. As a general matter, then we concluded that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.
Id. at 196-97, 109 S.Ct. at 1003-04.
The Court in DeShaney next addressed the mother's contention that a special relationship existed in the case because the State knew that the child faced a special danger of abuse at his fathers hands and proclaimed, by word or by deed, its intention to protect the child against that special danger. Id. at 197, 109 S.Ct. at 1004. The court characterized this argument as a contention that the State acquired an affirmative duty by undertaking the protection of the child and that its failure to discharge that duty in a reasonably competent fashion was an abuse of governmental power that shocked the conscience and constituted a substantive due process violation. Id. The court rejected this approach by explaining that while the Constitution imposes upon the State affirmative duties of care and protection, it does so only in cases where the State has affirmatively acted to restrain the individual's freedom to act on his own behalf through incarceration, institutionalization, or other similar restraint on personal liberty. Id. at 200, 109 S.Ct. at 1005-06. Thus, the court concluded that the DeShaney plaintiff had failed to articulate a viable theory to support her claim that the social worker's actions amounted to a violation of rights protected by the Fourteenth Amendment Due Process Clause.
Defendants argue that this case does not involve a violation of the Due Process Clause. The court agrees. Given that this case does not state a claim for a Due Process violation in a recognizable form, it is easier to explain what it is not rather than what it is. Plaintiffs do not argue that they have been denied procedural due process, rather they contend that the defendants' policies amount to a violation of their rights to substantive due process. The court finds that this case is not one which implicates the type of substantive due process violation which can arise from the interference with a fundamental right. Plaintiffs have not articulated, nor can this court envision, how the actions of the defendants constitute State action that shocks the conscience or interferes with rights implicit in the concept of ordered liberty by exercising its right to employ inmate labor, its privilege to not provide insurance coverage, and its decision to not reimburse victims of the negligent behavior of the inmates except through Board of Adjustment proceedings. The conduct of the defendants is neither arbitrary nor conscience shocking.
Plaintiffs urge this court to find that this suit states a claim for a substantive due process violation that is akin to the one addressed by the Eleventh Circuit in Cornelius v. Town of Highland Lake, 880 F.2d 348 (11th Cir.1989), cert. denied, 494 U.S. 1066, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990). The Cornelius case is one of many cases which addresses the liability of State actors for torts or crimes committed by inmates.[8] The *1149 court notes that several panels of the Eleventh Circuit have recently questioned the continued vitality of the Cornelius decision. See, e.g., Lovins v. Lee, 53 F.3d 1208, 1211 (11th Cir.1995); Wooten v. Campbell, 49 F.3d 696, 700 n. 4 (11th Cir.1995); Wright v. Lovin, 32 F.3d 538, 541 n. 1 (11th Cir.1994). Even assuming that the Cornelius case is still good law, the court finds that it is inapposite.[9]
In Cornelius, the Eleventh Circuit reversed a district court which had granted summary judgment to the defendants in a suit against a municipality, its mayor, the Alabama Department of Corrections, and other defendants by finding that the defendants owed the plaintiff no duty under Section 1983 to protect her from the criminal actions of the work squad inmates because no special relationship existed between the plaintiff and either the defendants or the inmates. Cornelius, 880 F.2d at 351, 359. The Eleventh Circuit held that under the "special relationship analysis" a private citizen may hold a government official liable under Section 1983 for deprivations by a third party of the private citizen's due process rights when a special relationship is found to exist between the victim and the third party or between the victim and the government official. Id. at 352-53.
When the duty which arises by virtue of the special relationship is coupled with some degree of culpable conduct on the defendant's part, § 1983 liability attaches. However, absent the relationship, "the due process clause of the Constitution does not protect a member of the public at large from the criminal acts of a third person, even though the state was remiss in allowing the third person to be in a position in which he might cause harm to a member of the public...."
Id. at 353 (citation omitted). The Cornelius opinion goes on to describe an alternative way to create a duty that can subject the government official to liability for the actions of a third party in situations where the plaintiff faces a "special danger." Id. at 354-55.
What Cornelius most clearly establishes is that in certain circumstances a government official may be held liable for damages to a plaintiff suing under Section 1983 because a third person violated her constitutional rights. But for the concept of sovereign immunity and the strictures of the Eleventh Amendment, plaintiffs could use these cases to argue that the State officials whom they have named as defendants in this case must be liable for injuries caused by the actions of the inmates. This court finds that no tortured reading of Cornelius or Nishiyama compels this court to find that the State of Alabama or its officials must accept responsibility for the negligent conduct of the inmates that drive State-owned vehicles by extending insurance coverage to these drivers or else violate the due process rights of any citizen who may encounter such a driver in an accident of an Alabama highway.

VI. CONCLUSION
Plaintiffs complain that if the State van which ran into the rear of their vehicle had been driven by a State employee or agent they would have been able to recover their full damages from State provided liability insurance. Since, however, the State van was driven by an inmate, they were restricted to a claim before the Board of Adjustment, where their recovery was greatly restricted. At best, this is an inequitable situation to be remedied by State legislation. It does not rise to the level of a violation of the United States constitution.
In light of the aforementioned findings of this court, the court need not and does not reach the other bases proffered by the defendants in support of their Motions for Summary Judgment. For the reasons stated above, the court finds that the Motions for Summary Judgment of all remaining defendants are due to be GRANTED.
NOTES
[1] Plaintiffs have named the following individuals as defendants: Tommy Herring ("Herring"), Commissioner of the Corrections Department for the State of Alabama; Ron Sutton ("Sutton"), Associate Commissioner of the Corrections Department of the State of Alabama; Roy Hightower ("Hightower"), Regional Coordinator for the Work Release Program of the Corrections Department of the State of Alabama; Willie Johnson ("Johnson"), Regional Coordinator for the Work Release Program of the Corrections Department of the State of Alabama; Randall Lucas ("Lucas"), Director of the Childersburg Community Work Center; Jerry L. Ferrell ("Ferrell"), Director of the Loxley Community Work Center; M.J. Thurman ("Thurman"), Director of the Alex City Work Release Center; Ronald Weaver ("Weaver"), Director of the Atmore Work Release Center; Pat Halliday ("Halliday"), Director of the Birmingham Work Release Center; Leon Forniss ("Forniss"), Director of the Camden Work Release Center; Billy Mitchem ("Mitchum"), Director of the Decatur Work Release Center; Glen Newton ("Newton"), Director of the East Thomas Work Release Center; Edward Gullion ("Gullion"), Director of the Elba Work Release Center; Billy Owen ("Owen"), Director of the Hamilton Work Release Center; James E. Reynolds ("Reynolds"), Director of the Director of the Mobile Work Release Center; and Richard Baker ("Baker"), Assistant Director of the Montgomery Work Release Center. Each is sued both in their individual and in their official capacities. The court will refer to these defendants collectively as the "Corrections Defendants."

In addition to the named defendants, the plaintiffs claim against "those individuals who have defined, implemented, and carried out the policies, customs, practices and procedures that allow State inmates in the custody and control of the Department of Corrections of the State of Alabama, to drive State-owned vehicles on the public roads of Alabama without affording them the same coverage provided to all other agents and employees of the State of Alabama as set forth under § 36-1-6 and § 36-1-6.1, Alabama Code (1975) for the protection of the general public." SAC ¶ III.
[2] The complaint charges that inmates, trustees, work release prisoners and other prisoners operated the vehicles, but this court will refer to any such individual as an inmate for simplicity's sake.
[3] Plaintiffs claims for alleged violations of their Due Process Clause rights are contained in Count One. Plaintiffs claims for alleged violations of their Equal Protection Clause rights are contained in Count Two.
[4] In his affidavit, Ronald E. Jones ("Jones"), the Commissioner for the Alabama Department of Corrections, states that the Department of Corrections is an agency of the State of Alabama which is totally separate from the Department of Finance and the Board of Adjustment. (Def.Ex. 3). The Department of Corrections has no control or authority over the Department of Finance or the Board of Adjustment. (Def.Ex. 3).
[5] While this state sovereign immunity doctrine does not prevent this court from hearing a suit against the state, the Eleventh Amendment does prohibit this court from exercising jurisdiction over a suit against a state instrumentality or agency for damages.
[6] Such a decision would not be contrary to Alabama law which does not require drivers, or owners to insure their motor vehicles.
[7] Another practical obstacle is that plaintiffs have dropped all claims for damages in this suit, even the claims not prohibited by the Eleventh Amendment.
[8] The facts of the Cornelius case are as follows. The Mayor of the Town of Highland Lake requested that the Department of Corrections provide the city with inmate labor for general maintenance and public works purposes. Cornelius, 880 F.2d at 349. The St. Clair Correctional Facility provided some inmates to perform the labor. Id. An unarmed civilian supervised the inmates while they worked. Id. at 350. While they were working, the inmates had access to axes, picks, machetes, knives, and saws. Id. Two of these inmates abducted, at knife point, the plaintiff, an employee of Highland Lake whose job required her to work the where the inmates were. The inmates terrorized plaintiff for days. Id. Plaintiff sued various officials pursuant to Section 1983 alleging deliberate indifference in violation of her constitutionally protected liberty interests under the Fourteenth Amendment. Id. at 350-51.
[9] Plaintiffs also cite Nishiyama v. Dickson County, Tenn., 814 F.2d 277 (6th Cir.1987). This case is factually analogous to Cornelius, and consequently, it is also irrelevant to the instant suit.